# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JASON ALCORN, # 13530-045, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | Case No. 16-cv-418-SMY |
| ) | |
| CHARLIE DANIELS, ) | |
| Warden, Terre Haute, ) | |
| ) | |
| Respondent. ) | |

# MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Federal prisoner Jason Alcorn filed a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 to challenge the imposition of disciplinary sanctions against him; specifically the loss of 41 days of good conduct credit against his sentence. (Doc. 1). Respondent filed a Response to the Petition (Doc. 10), and Alcorn replied (Doc. 12). For the following reasons, the Petition will be denied.

## Relevant Facts and Procedural History

Alcorn was convicted in the United States District Court for the District of Kansas of using or carrying a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. §§ 924 and 1201. (Doc. 10, p. 1; Doc. 10-2, p. 2). On April 15, 2002, he was sentenced to 360-months and is currently incarcerated at the FCI-Greenville. As of the date of the Respondent's Response, Alcorn's projected release date was calculated to be December 19, 2026. (Doc. 10, p. 1; Doc. 10-2, pp. 1-2). His sentence is set to fully expire on August 31, 2030. (Doc. 10, p. 1; Doc. 10-2, p. 4). The disciplinary incident that gave rise to this action occurred while Alcorn was incarcerated at the FCI-Terre Haute, Indiana. Therefore, Alcorn named the warden of that institution as the

Respondent herein.[1]

On the morning of November 26, 2014, Officer J. Horn searched the common area of cell block C-1 and found a pair of shoes in which a hypodermic needle was concealed. (Doc. 1, pp. 3, 21; Doc. 10, pp. 3-4). The area was under video surveillance, which showed that Alcorn had carried the shoes into the room and set them down by a table. Horn prepared an incident report charging Alcorn with possession of drug paraphernalia (a Code 113 violation). *Id.* The report was allegedly delivered to Alcorn by Lt. C. Wingerd at 8:00pm on the same day. (Doc. 10, p. 3; Doc. 10-3, pp. 1-2). However, Alcorn disputes that the incident report was given to him at that time and claims he did not receive it until his Unit Disciplinary Committee ("UDC") hearing on December 3, 2014, 7 days after the incident. (Doc. 1, pp. 5, 15; Doc. 10, p. 3; Doc. 12, pp. 1-2).

Alcorn requested a staff representative (C.O. Reberger) to assist him at the next stage of the disciplinary proceedings – the hearing before a Disciplinary Hearing Officer ("DHO"). (Doc. 1, pp. 6, 11; Doc. 10, p. 3). Alcorn requested that Reberger have the surveillance video saved so it could be reviewed, but it had already been destroyed. (Doc. 1, p. 6; Doc. 10, p. 6; Doc. 12, p. 2). Alcorn also claims he gave Reberger a list of witnesses and questions for each in preparation for his DHO hearing, but Respondent disputes that Alcorn requested any witnesses. (Doc. 1, pp. 7, 19; Doc. 10, p. 3; Doc. 12, pp. 3, 6). The DHO hearing was held on April 29, 2015. Alcorn was found guilty and sanctioned with the loss of 41 days of good conduct time and 90 days of restrictions on visitors and MP3 player use. (Doc. 1, p. 8; Doc. 10, pp. 3-4; Doc. 10-4).[2]

---

[1] The proper respondent in a habeas corpus action is the warden of the institution where the petitioner is confined; but Respondent has not objected to having been named in this action. *See Bridges v. Chambers*, 425 F.3d 1048, 1049-50 (7th Cir. 2005) (proper habeas respondent is the prisoner's current custodian). In light of the disposition of this case, the Court does not find it necessary to substitute Alcorn's current custodian as Respondent.

[2] Respondent outlines some irregularities in Alcorn's efforts to exhaust his administrative remedies but does not claim that Alcorn failed to exhaust before filing this action. (Doc. 10, pp. 4-5).

## **Grounds for Habeas Relief**

Alcorn alleges that while the video showed him bringing the shoes into the common area and setting them down by a table, the needle was not discovered inside the shoes until hours later. (Doc. 1, pp. 3-4). In the meantime, many other inmates had access to the shoes and could have hidden the needle inside them. He claims that if the entire video had been reviewed, it would have showed another person placing the item in the shoes. *Id.* Alcorn also challenges Wingerd's documentation of giving Alcorn the incident report on November 26, 2014, based on Wingerd's later admission that Alcorn may have been asleep at the time and he may have filled out the report without speaking to Alcorn. (Doc. 1, pp. 5, 11, 22; Doc. 12, pp. 2, 5).

Finally, Alcorn makes the following allegations relative to the final hearing: the DHO interrupted his explanation of his inability to promptly request the video evidence and the rules on preservation of evidence, to say that Alcorn was going to be found guilty. (Doc. 1, pp. 7, 12). When Alcorn protested that he had not been able to call his witnesses, the DHO threatened him with a monetary sanction if he insisted on calling them. Reberger then told Alcorn to "just go before it gets worse," which Alcorn did in order to avoid another violation for disobeying an order. (Doc. 1, pp. 8, 12). The DHO report stated incorrectly that Alcorn did not request witnesses. (Doc. 1, pp. 12-13; Doc. 12, pp. 3, 6).

Based on the above allegations, Alcorn asserts that he was denied due process on the following bases:

(1) He was placed in the Special Housing Unit ("SHU") on November 26, 2014, without being given an incident report or a detention order which would have informed him of the charge against him, and was thus denied the opportunity to have the video evidence saved;

(2) His belated receipt of the incident report at the UDC hearing came too late for him to request preservation of the video evidence;

(3) The DHO denied his request to access the video evidence based on untimeliness (which

3

was caused by the lack of prompt notice of the charge);

(4) The DHO denied his request to call witnesses even though he made a timely request; and

(5) The DHO ignored the relevant facts and controlling law.

## Applicable Law

Inmates in the custody of the Bureau of Prisons can challenge the loss of good conduct credit through a petition for habeas relief pursuant to 28 U.S.C. § 2241. *Jackson v. Carlson*, 707 F.2d 943, 946 (7th Cir. 1983).

Inmates retain due process rights in connection with prison disciplinary proceedings, but such proceedings "are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). The minimum requirements of due process in such proceedings are (1) receipt of written notice of the charges in advance of the hearing, (2) an opportunity to be heard before an impartial decision maker, (3) the right to call witnesses and present evidence where the same will not be unduly hazardous to safety or correctional goals, and (4) a written statement as to the evidence relied on and the reason for the decision. *Wolff*, 418 U.S. at 564-66; *Henderson v. U.S. Parole Commission*, 13 F.3d 1073, 1077 (7th Cir. 1994).

The findings of the disciplinary hearing officer must be supported by "some evidence in the record." *Superintendent v. Hill*, 472 U.S. 445 (1985); *see also Black v. Lane*, 22 F.3d 1395, 1402 (7th Cir. 1994). The "some evidence" standard is a low bar, which the Seventh Circuit has described as a "meager threshold." *Scruggs v. Jordan*, 485 F.3d 934, 941 (7th Cir. 2007) ("once the meager threshold has been crossed our inquiry ends"). The Court does not reweigh the evidence or determine credibility. *Meeks v. McBride*, 81 F.3d 717, 720 (7th Cir. 1996). Nor does the Court "assess the comparative weight of the evidence underlying the disciplinary board's

decision." *Webb v. Anderson*, 224 F.3d 649, 652 (7th Cir. 2000). Instead, the "relevant question is whether there is *any* evidence in the record that *could* support the conclusion reached by the disciplinary board." *Id.* (quoting *Hill*, 472 U.S. at 455-56 (emphasis in original). The evidence need not be sufficient to logically exclude any result except the one reached by the prison decision maker. *Viens v. Daniels*, 871 F. 2d 1328, 1334-35 (7th Cir. 1989); *see also Hill*, 472 U.S. at 457. As such, this Court can overturn the decision "only if no reasonable adjudicator could have found [petitioner] guilty of the offense on the basis of the evidence presented." *Henderson*, 13 F.3d at 1077. Only evidence that was presented to the hearing officer is relevant to the determination of whether there was "some evidence." *Hamilton v. O'Leary*, 976 F.2d 341, 346 (7th Cir. 1992).

## **Analysis**

Alcorn has not established that he was denied due process in connection with the disciplinary proceedings. *Wolff* instructs that an inmate must be given written notice of a violation at least 24 hours before a disciplinary hearing. The purpose of the notice requirement is to permit "the accused to gather the relevant facts and prepare a defense." *Northern v. Hanks*, 326 F.3d 909, 910 (7th Cir. 2003). Alcorn asserts this requirement was violated because despite Wingerd's written documentation to the contrary, Wingerd never gave him a copy of the incident report on November 26, 2014; he received the report 7 days later, at the end of his UDC hearing on December 3, 2014. While the delivery of the report satisfied *Wolff* as to the DHO hearing which was held on April 29, 2015, Alcorn claims he was prejudiced by the late notice of the disciplinary charge because by the time he received it and requested staff assistance to obtain the surveillance videotape, that evidence had already been destroyed.

Bureau of Prisons regulations provide for two preliminary steps before an inmate faces the DHO hearing at which he may lose good-conduct credits if he is found guilty of a disciplinary

5

infraction. When an incident report is issued, a staff member will investigate the incident and inform the inmate of the charges and of his rights to explain the incident and request evidence and witnesses. 28 C.F.R. § 541.5. The incident report is "ordinarily" delivered to the inmate within 24 hours. *Id.* If the incident is not informally resolved at the investigation stage, the report is then reviewed by the UDC. 28 C.F.R. § 541.7. The inmate may make a statement and present documentary evidence to the UDC during its review. 28 C.F.R. § 541.7(d) and (e). The UDC is empowered to impose certain sanctions if it finds the inmate guilty, but the UDC *may not* revoke good conduct credit. § 541.7(f); *see also* 28 C.F.R. §541.3 (listing prohibited acts and available sanctions). Serious infractions that may result in loss of sentence credit are referred to the DHO for further review. § 541.7(a), (g). The inmate must receive the UDC's written report of its decision, which includes notice of the inmate's rights to request a staff representative, witnesses, and obtain and present documentary evidence at the DHO hearing. *See* 28 C.F.R. § 541.8(d), (e), (f). While these regulations incorporate some of the *Wolff* requirements, administrative regulations in and of themselves do not have constitutional force. *See Jones v. Cross*, 637 F.3d 841, 846-47 (7th Cir. 2011) (federal prison regulations do not give rise to a protected liberty interest); *White v. Henman*, 977 F.2d 292, 295 (7th Cir. 1992) (the violation of an administrative rule is not the same as a violation of the Constitution).

The key issue with respect to Alcorn's due process claim is whether the constitutional requirement of 24 hours' notice prior to the disciplinary hearing applies to the UDC hearing/review, or only to the DHO hearing. Courts confronting this question have concluded that the DHO hearing is the relevant benchmark. The Tenth Circuit has held: "Unlike DHO hearings, the *Wolff* due process requirements do not apply to UDC hearings[,]" noting that the UDC hearing is "constitutionally unnecessary." *Brennan v. United States*, 646 F. App'x 662, 667 (10th Cir.

2016) (citing *Brown v. Rios*, 196 F. App'x 681, 683 (10th Cir. 2006) (*Wolff* advance-notice requirement applies only to disciplinary hearing, not UDC hearing)). Thus in *Brennan*, delivery of the incident report to the inmate "moments before" his UDC hearing did not violate due process. *Id.* *See also Obiegbu v. Werlinger*, 488 F. App'x 585, 586 (3d Cir. 2012) (due process does not require a UDC hearing; inmate received all the process he was due when he got advance notice of the DHO hearing, at which he presented his defense; and received written statement with reasons for DHO decision); *Patton v. Hall*, No. 18-5235, 2018 WL 7569342, at *1 (6th Cir. Aug. 7, 2018) (no due process violation where UDC hearing was not held prior to disciplinary hearing). The Seventh Circuit has characterized the UDC hearing as a "preliminary hearing." *Whitten v. Clark*, 78 F.3d 587 (table) (7th Cir. 1996), 1996 WL 89224, at *1. *See also Northern v. Hanks*, 326 F.3d 909, 910 (7th Cir. 2003) (written notice of the disciplinary charge was not delivered to state inmate within 24 hours of its issuance, but inmate did receive it at least 24 hours before his disciplinary hearing, "which is all the Due Process Clause requires"). Applying these precedents, this Court concludes that Alcorn's receipt of the incident report at the conclusion of his December 3, 2014 UDC hearing was sufficient to meet the *Wolff* notice requirement; it was delivered well in advance of the April 2015 DHO hearing at which Alcorn faced the potential penalty of losing good-conduct credits.

Having concluded that Alcorn received constitutionally adequate notice of the charge against him, the Court turns to the matter of whether he was denied his right to present evidence and witnesses, and whether the disciplinary decision had evidentiary support. Alcorn alleges he was prejudiced by his inability to present evidence (the entire videotape) to the DHO and by the DHO's refusal to allow his witnesses. Such claims are subject to harmless error analysis. *See Jones v. Cross*, 637 F.3d 841, 846-47 (7th Cir. 2011) (applying harmless error analysis to due

process claim); *Piggie v. Cotton*, 344 F.3d 674, 678-80 (7th Cir. 2003) (violation of prisoner's right to call witness in disciplinary hearing was harmless; remanded for determination of whether security reasons justified failure to disclose videotape, whether it was exculpatory, and whether any error was harmless).

It is unfortunate that the surveillance video was destroyed before Alcorn requested his staff representative to obtain it.[3] That said, whether Alcorn suffered any prejudice as a result of the loss of the video evidence depends on whether it contained any exculpatory material. Alcorn speculates that the tape would have shown another person placing the syringe in the shoe, but as he was admittedly not present in the room, he could not know whether another inmate handled the shoes. Officer Horn's incident report documents that he discovered the shoes at approximately 9:20 am. (Doc. 10-3, p. 1). Horn then reviewed the videotape, which according to his description, showed Alcorn placing the shoes "on a seat attached to a common area table. [Horn] then continued reviewing the video [showing] from the time the shoes were placed on the seat and the time [he] recovered them, and inmate Alcorn was the only individual touching the shoes." (Doc. 10-3, p. 1). According to Horn's account, the contents of the video were not exculpatory at all, but instead implicated Alcorn as the only person in possession of the drug paraphernalia. *See Shroyer v. Cotton*, 80 F. App'x 481, 484 (7th Cir. 2003) (no due process violation where inmate was not given access to videotape which was not exculpatory, and which was viewed and considered by hearing board).[4] Based on these facts, the denial of Alcorn's access to the videotape amounted to harmless error, and does not rise to the level of a due process violation that would upend the disciplinary

---

[3] Alcorn does not disclose when he made this request; he says only that he did so after he was released from the SHU. (Doc. 1, p. 6). It is unknown how long Alcorn remained in the SHU, and thus how much delay occurred before the video request was made, after Alcorn received the incident report on December 3, 2014.
[4] Here, of course, the DHO did not review the videotape itself, as it is undisputed that the tape no longer existed at the time of the hearing. The DHO review was thus limited to Officer Horn's account of what the tape contained.

action.

Alcorn never denied that he placed the shoes in the common room. This together with Horn's description of the video's contents satisfy the requirement that the disciplinary decision be based on "some evidence." A prison officer's written report alone can fulfill the "some evidence" requirement. *McPherson v. McBride*, 188 F.3d 784, 786 (7th Cir. 1999). The DHO report relied on Officer Horn's description of the shoes and the videotape which showed Alcorn was the only person who touched them, as well as Alcorn's failure to address the prohibited act during the hearing, instead raising the defense that he did not receive proper notice of the charge. (Doc. 1, pp. 23-24; Doc. 10-6, pp. 20-21). Given the evidence before the DHO, the Court cannot say that the disciplinary decision was arbitrary or lacking evidentiary support.

Finally, Alcorn has not presented any facts to suggest that the outcome of his hearing would have been different if he had been permitted to call witnesses. His representative, Reberger, was able to question Lt. Wingerd about his alleged delivery of the incident report to Alcorn on November 26, 2014, and Reberger's summary of Wingerd's statement was included in the DHO report. (Doc. 1, p. 22; Doc. 10-6, p. 19). That information tended to substantiate Alcorn's claim that he never received the incident report in advance of his UDC hearing. However, Wingerd's statement had no bearing on the ultimate issue of whether Alcorn possessed the contraband.

The only other witness Alcorn requested was Officer Horn, who issued the disciplinary report and whose statement was incorporated into the DHO report (Doc. 1, p. 19; Doc. 10-6, p. 11). Respondent notes that the "reporting staff member" (Horn) cannot be called as a witness (Doc. 10, p. 7), and Alcorn makes no argument that Horn's purported testimony would have been exculpatory. A prisoner does not have the right to call a witness whose testimony would be irrelevant, repetitive, or unnecessary. *See Piggie v. Cotton*, 344 F.3d 674, 677 (7th Cir. 2003);

9

*Pannell v. McBride*, 306 F.3d 499, 502-03 (7th Cir. 2002); *Forbes v. Trigg*, 976 F.2d 308, 317-18 (7th Cir. 1992).

The other potential witnesses on Alcorn's list were "unknown persons in Health Services" and "unknown witnesses present in C-1 Dayroom on Nov. 26, 2014 morning." (Doc. 1, p. 19; Doc. 10-6, p. 11). The Petition does not indicate that Alcorn ever identified any of these potential witnesses by name, thus he cannot complain that he was denied the opportunity to call these unidentified people at his hearing. As with Alcorn's other claims of error, the alleged denial of his right to call witnesses was harmless and did not amount to a due process violation.

## **Conclusion**

For the foregoing reasons, Alcorn's Petition for habeas relief under 28 U.S.C. § 2241 (Doc. 1) is **DENIED**. This cause of action is **DISMISSED WITH PREJUDICE**. The Clerk of Court shall enter judgment accordingly.

If Petitioner wishes to appeal the dismissal of this action, his notice of appeal must be filed with this Court within 60 days of the entry of judgment. FED. R. APP. P. 4(a)(1(A). A motion for leave to appeal *in forma pauperis* ("IFP") must set forth the issues Petitioner plans to present on appeal. *See* FED. R. APP. P. 24(a)(1)(C). If Petitioner does choose to appeal and is allowed to proceed IFP, he will be liable for a portion of the $505.00 appellate filing fee (the amount to be determined based on his prison trust fund account records for the past six months) irrespective of the outcome of the appeal. *See* FED. R. APP. P. 3(e); 28 U.S.C. § 1915(e)(2); *Ammons v. Gerlinger*, 547 F.3d 724, 725-26 (7th Cir. 2008); *Sloan v. Lesza*, 181 F.3d 857, 858-59 (7th Cir. 1999); *Lucien v. Jockisch*, 133 F.3d 464, 467 (7th Cir. 1998). A proper and timely motion filed pursuant to Federal Rule of Civil Procedure 59(e) may toll the 60-day appeal deadline. FED. R. APP. P. 4(a)(4). A Rule 59(e) motion must be filed no more than twenty-eight (28) days after the entry of the

judgment, and this 28-day deadline cannot be extended.  Other motions, including a Rule 60 motion for relief from a final judgment, do not toll the deadline for an appeal.

**IT IS SO ORDERED.**

**DATED: September 27, 2019**

                                              *s/ Staci M. Yandle*
                                              STACI M. YANDLE
                                              United States District Judge